UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RECEIVED
Clerk's Office
USDC, Mass.
Date 1/26/05
By M.P.
Deputy Clerk

| | | |
|---|---|---|
| LYCOS, INC., | ) | C.A. No. 04-12716-WGY |
| Plaintiff, | ) | |
| v. | ) | **LYCOS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| TELEFONICA DATA USA, INC., | ) | |
| Defendant. | ) | |

## INTRODUCTION

Plaintiff Lycos, Inc. ("Lycos") commenced this action against defendant Telefonica Data USA, Inc. ("T-Data") seeking declaratory and injunctive relief relating to the interpretation of a master services agreement ("MSA") and several exhibits and schedules with respect thereto (collectively, the "Transaction Documents") entered into by Lycos and T-Data in November of 2003. T-Data responded with a Motion to Dismiss on the grounds that this Court lacks both subject matter and personal jurisdiction.

Because the parties resolved certain of the matters raised in the initial complaint and Lycos has subsequently developed and identified certain other disputes, Lycos has herewith filed a First Amended Complaint. The First Amended Complaint does not include certain of the claims raised in the original complaint and asserts three new claims that present a controversy between the parties sufficient to satisfy the requirements of Article III of the United States Constitution, thus addressing T-Data's subject matter jurisdiction arguments.

As to personal jurisdiction, the First Amended Complaint, along with affidavits filed herewith by Andrew Feinberg, Dean Batten, and Julie Callagee, demonstrate that this Court

has personal jurisdiction over T-Data under federal and Massachusetts law because T-Data has had sufficient purposeful contacts with the Commonwealth of Massachusetts.

For these reasons, Lycos respectfully requests that this Court deny the defendant's Motion to Dismiss.

## RELEVANT FACTS

Lycos is in the business of providing web search and directory services, community and personalization features, and personal web publishing. (First Amended Complaint, ¶ 9). Companies such as Lycos that depend on fast, reliable and uninterrupted access to its web sites by a large volume of users typically hire the services of a company offering high-capacity data and communication services, including web-server housing and internet connectivity. (*Id.* at ¶ 10.). Hosting companies hired by Lycos house Lycos' web servers, which means that they employ a physical building or room with security systems, redundant power supply and climate and temperature controls, along with network connectivity, to ensure that Lycos' servers never "go down." (*Id.* at ¶ 11).

In 2003, Lycos and T-Data negotiated, and eventually executed in November, the Transaction Documents, pursuant to which T-Data agreed to provide Lycos with certain data storage, web server housing, and networking and communication services, described in detail in the Transaction Documents. (First Amended Compl. ¶ 13; Feinberg Aff. ¶ 2). During the negotiation of the Transaction Documents, T-Data's employees, representatives, and/or attorneys initiated numerous communications to Lycos personnel residing in Waltham, Massachusetts, including making at least ten phone calls and sending at least fifteen emails to Lycos' General Counsel to discuss what became the Transaction Documents. (First Amended Compl. ¶ 8(B); Feinberg Aff. ¶ 3). Further, in or around mid-October of 2003, senior

executives of T-Data met face-to-face with senior executives of Lycos at Lycos' offices in Waltham, Massachusetts, to negotiate outstanding issues in what were to become the Transaction Documents. (First Amended Compl. ¶ 8(A); Feinberg Aff. ¶ 4). Present on behalf of T-Data were Peter Pizarro, Chief Executive Officer, Ronald Jones, Vice President of Operations, and Zeke Rodriguez, Vice President of Sales. (*Id.*). This meeting lasted an entire business day, and involved intensive discussion of numerous provisions of the Transaction Documents. (*Id.*). In fact, this was the only face-to-face meeting between the senior executives of Lycos and T-Data during the negotiations. (*Id.*).

After execution of the Transaction Documents, T-Data's employees, representatives, and/or attorneys initiated numerous telephone calls and e-mails to Lycos personnel in Waltham, Massachusetts in connection with the parties' performance under the Transaction Documents. (First Amended Compl. ¶ 8(C); Feinberg Aff. ¶ 6; Batten Aff. ¶ 4). In addition, T-Data sent two significant letters to Lycos' Director of Operations in Waltham, Massachusetts, the first of which, dated December 20, 2004, was titled "Notice of Termination of Services" and demanded amounts T-Data claimed were due and owing and threatening to "immediately terminate all services" provided to Lycos if those disputed amounts were not paid,[1] and the second of which, dated January 20, 2005, gave notice of default under the Transaction Documents for amounts T-Data claims are due and owing. (Batten Aff. ¶ 4, Exh. B). T-Data has also sent at least five invoices for services rendered to Lycos' Waltham, Massachusetts office. (First Amended Compl. ¶ 8(E); Batten Aff. ¶ 4).

---

[1] As a result of this letter, Lycos was required to file its original complaint in this litigation seeking an injunction to prevent the termination of services. Lycos and T-Data were able to avert this particular crisis by agreement.

T-Data has also rendered services to Lycos in Massachusetts. One of the services provided to Lycos by T-Data under the Transaction Documents is a so-called "ATM" service. (First Amended Compl. ¶ 20; Batten Aff. ¶ 2). An ATM "circuit" is simply a dedicated path between the source and destination of the digital data. (*Id.*). Here, Lycos ordered from T-Data a dedicated circuit from Madrid, Spain to Waltham, Massachusetts, commonly known as the "Madrid circuit." (First Amended Compl. ¶ 20; Batten Aff. ¶ 2). To establish this circuit and to commence this particular ATM service, T-Data installed, or caused it to be installed, a wire at Lycos' Massachusetts location. (First Amended Compl. ¶ 22; Batten Aff. ¶ 3). In fact, the Order Form for the Madrid circuit specifically refers to the "installation address" as Lycos' office at 100 Fifth Avenue, Waltham, Massachusetts. (First Amended Compl., Ex. A, Schedule I-1; Batten Aff. ¶ 3, Exh. A). Based on the foregoing, and by maintaining the Madrid circuit, as it was required to do under the Transaction Documents, T-Data rendered services to Lycos in Massachusetts. (First Amended Compl. ¶ 22).

Since T-Data began providing Lycos services under the Transaction Documents in November of 2003, Lycos has paid T-Data over $1 million for those services. (First Amended Compl. ¶ 8(F); Callagee Aff. ¶ 2). All of these payments by Lycos were made from Lycos' account with Bank of America (f/k/a Fleet Bank) located in Boston, Massachusetts. (*Id.*).

## **ARGUMENT**

I.  **Defendant's Subject Matter Jurisdiction Concerns Have Been Mooted By Lycos' First Amended Complaint**

The first basis for dismissal presented by T-Data is that the Court lacks subject matter jurisdiction under Rule 12(b)(1) to entertain the claims for declaratory and injunctive relief contained in Lycos' original complaint. Lycos does not dispute that certain of the matters

contained in Lycos' original complaint have been resolved. However, new controversies have been identified and arisen between the parties. Lycos has filed its First Amended Complaint herewith which sets forth these current and actual controversies. As a result, T-Data's argument for dismissal under Rule 12(b)(1) is moot, and Lycos' First Amended Complaint, which was not the subject of the Motion to Dismiss, should not be dismissed on this ground.

II.  **T-Data Has Sufficient Minimum Contacts With the Commonwealth Resulting From Intentional and Deliberate Acts To Confer Personal Jurisdiction**

In the First Amended Complaint and affidavits in support of this Opposition, Lycos has proffered facts sufficient to show that this Court has personal jurisdiction over T-Data in the Commonwealth of Massachusetts. While the burden does fall on the plaintiff to make out a prima facie case for the existence of personal jurisdiction, the Court when utilizing this standard should consider whether the plaintiff has proffered evidence that, "if credited, is enough to support findings of all facts essential to personal jurisdiction." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995). In so doing, this Court does not act as a factfinder but instead "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." *Id.* In other words, the Court should "take the specific facts affirmatively alleged by [the plaintiff] as true (whether or not disputed) and construe them in the light most favorable to the jurisdictional claim." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 184 F. Supp. 2d 55, 61 (D. Mass. 2001) (Young, J.).[2]

---

[2] While the vast majority of cases will involve the Court utilizing the prima facie standard when reviewing a motion to dismiss for lack of personal jurisdiction, the First Circuit has recognized that two additional standards – the likelihood standard and the preponderance standard – may apply in certain circumstances. The likelihood standard is normally applied when "the facts necessary to sustain personal jurisdiction are intimately bound up with facts necessary to establish the merits of the underlying claim," while the preponderance standard, involving a full-blown evidentiary hearing, is only necessary when "the proffered evidence is conflicting and the record is rife with contradictions, or when a plaintiff's affidavits are patently incredible." *Foster-Miller, Inc. v.*

In diversity cases like this one, determining personal jurisdiction is a two-step process – first jurisdiction must be found to exist under the Massachusetts long-arm statute, and then "the hurdle of constitutional due process requirements must also be cleared." *Home Owners Funding Corp. of America v. Century Bank*, 695 F. Supp. 1343, 1345 (D. Mass. 1988) (Young, J.), *citing Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 983 (1st Cir. 1986). Lycos addresses these two steps in turn.

    A.    *Personal Jurisdiction Exists Under the Massachusetts Long-Arm Statute*

The Massachusetts long-arm statute, M.G.L. c. 223A, § 3, enumerates several ways that personal jurisdiction can attach based on the actions or conduct of the foreign defendant, one of which, § 3(a), is applicable here. It states as follows:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (a) transacting any business in this commonwealth.

This provision has been "construed broadly," such that it "may be satisfied where the only contact involved is an 'isolated' transaction, or one with 'little impact on the commerce' of the commonwealth." *Whistler Corp. v. Solar Electronics, Inc.*, 684 F. Supp. 1126, 1130 (D. Mass. 1988) (Young, J.). Indeed, "[i]t is clear that anything but the most incidental commercial conduct with a Massachusetts resident is sufficient to satisfy the transacting any business test." *GSI Lumonics, Inc. v. Biodiscovery, Inc.*, 112 F. Supp. 2d 99, 105 (D. Mass. 2000) (Young, J.).

As described above, Lycos has alleged and supported by affidavit T-Data's numerous purposeful contacts with Massachusetts, any one of which on its own (let alone all of them

---

*Babcock & Wilcox Canada*, 46 F.3d 138, 145-47 (1st Cir. 1995) (citations omitted). Neither of these situations is present in this case.

together) is sufficient to maintain personal jurisdiction under the Massachusetts long-arm statute. For example, the First Circuit has held that "a foreign defendant's sending of a single telex to a plaintiff in Massachusetts fulfills the 'transacting business' requirement." *JMTR Enterprises, LLC v. Duchin*, 42 F. Supp. 2d 87, 96 (D. Mass. 1999) (Young, J.). A one-day business meeting in Massachusetts has also been found sufficient by itself to meet the "transacting business" test. *See Salvador v. Meese*, 641 F. Supp. 1409, 1415 (D. Mass. 1986). Similarly, sending a "warning letter" (*see Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 195 (1st Cir. 1980)) and frequent telephone calls, letters and invoices directed to the Massachusetts plaintiff (*see Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 10, 389 N.E.2d 76, 80 (1979)) are also actions which, by themselves, confer jurisdiction under G.L. c. 223A, § 3(a). Thus, Lycos' allegations, supported by affidavit, that T-Data initiated numerous telephone calls, letters and e-mails into the Commonwealth with respect to the negotiation and performance of the Transaction Documents, attended an all-business day meeting to negotiate the Transaction Documents, and received more than $1 million from a Massachusetts bank in payment for services, satisfies the jurisdictional analysis under the long-arm statute.

 B. *Personal Jurisdiction Over T-Data Also Comports With Constitutional Constraints*

As the statutory test has been met, the Court must now decide whether subjecting T-Data to jurisdiction in Massachusetts offends the Fourteenth Amendment's requirement of fundamental fairness, which is met when certain "minimum contacts" exist between the foreign defendant and the forum state. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). In reviewing a defendant's contacts, the Court's attention must be focused on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

In analyzing minimum contacts, courts recognize two types of personal jurisdiction: general and specific. *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992). Lycos relies at this time on this Court's specific personal jurisdiction, which exists if a case "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). The First Circuit divides specific jurisdiction constitutional analysis into three categories: relatedness, purposeful availment, and reasonableness:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-based activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Foster-Miller*, 46 F.3d at 144. "Less is required to support jurisdiction when, as in this case, the cause of action arises from the defendant's contacts with the forum than when it does not." *JMTR Enterprises*, 42 F. Supp. 2d at 98. The First Circuit has applied this three-part test by first examining the "relatedness" and "purposeful availment" standards, and then factoring in the "reasonableness" Gestalt factors at the end only if the plaintiff has made "a minimally sufficient showing of relatedness and purposefulness," in which case the reasonableness test may be allowed to tip the balance one way or the other.

With respect to contract claims, such as those in this case, courts examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985). Specifically, the Court must perform an "evaluation of the relations between the

parties, their respective activities under the contract, and the linkages, if any, between the defendant's participation in the transaction and Commonwealth of Massachusetts." *Energy Capital and Services LP v. Hill Refrigeration, Inc.*, 989 F. Supp. 353, 355 (D. Mass. 1997). The Court "must look at all of the communications and transactions between the parties, before during and after the consummation of the contract, to determine the degree and type of contacts the defendant has with the forum, apart from the contract alone." *Ganis Corp. of Cal. v. Jackson*, 822 F.2d 194, 197 (1st Cir. 1987).

The following sets forth the facts alleged by Lycos to support a finding of both "relatedness" and "purposeful availment":

(1) Representatives of T-Data traveled to Massachusetts to meet with Lycos, in this case to negotiate the contract. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002); *Brown Rudnick Berlack Israels LLP v. Brooks*, 311 F. Supp. 2d 131 (D. Mass. 2004); *JMTR Enterprises, LLC v. Duchin*, 42 F. Supp. 2d 87 (D. Mass. 1999) (Young, J.); *Home Owners Funding Corp. of America v. Century Bank*, 695 F. Supp. 1343 (D. Mass. 1988) (Young, J.).

(2) T-Data initiated contact with Lycos by sending numerous letters, faxes and emails, and making telephone calls to Lycos into Massachusetts, both during negotiation and performance of the contract. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002); *Brown Rudnick Berlack Israels LLP v. Brooks*, 311 F. Supp. 2d 131 (D. Mass. 2004); *JMTR Enterprises, LLC v. Duchin*, 42 F. Supp. 2d 87 (D. Mass. 1999) (Young, J.); *Trans National Travel, Inc. v. Sun Pacific International, Inc.*, 10 F. Supp. 2d 79 (D. Mass. 1998); *Energy Capital and Services LP v. Hill Refrigeration, Inc.*, 989 F. Supp. 353 (D. Mass. 1997); *Home Owners Funding Corp. of America v. Century Bank*, 695 F. Supp. 1343 (D. Mass. 1988) (Young, J.);

    *Yankee Group, Inc. v. Yamashita*, 678 F. Supp. 20 (D. Mass. 1988); *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76 (1979).

(3) T-Data sent invoices to Lycos in Massachusetts. *Hahn v. Vermont Law School*, 698 F.2d 48 (1st Cir. 1983); *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76 (1979).

(4) T-Data performed some amount of service (large or small) for Lycos with respect to the Madrid circuit in Massachusetts. *Trans National Travel, Inc. v. Sun Pacific International, Inc.*, 10 F. Supp. 2d 79 (D. Mass. 1998)

(5) T-Data sent a "warning letter" to Lycos in Massachusetts threatening to terminate services under the Transaction Documents. *Nova Biomedical Corp. v. Moller*, 629 F.2d 190 (1st Cir. 1980); *GSI Lumonics, Inc. v. Biodiscovery, Inc.*, 112 F. Supp. 2d 99 (D. Mass. 2000) (Young, J.).

(6) T-Data accepted payment for services rendered from Lycos' Massachusetts bank accounts. *Trans National Travel, Inc. v. Sun Pacific International, Inc.*, 10 F. Supp. 2d 79 (D. Mass. 1998); *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76 (1979).

Two particularly applicable cases from those cited above are worthy of further elucidation. In *JMTR Enterprises, LLC v. Duchin*, 42 F. Supp. 2d 87, 96 (D. Mass. 1999) (Young, J), the plaintiffs brought a breach of contract claim against the out-of-state defendants arising out of a failed purchase and sale agreement of the plaintiffs' business. The contacts alleged by the plaintiffs in support of specific jurisdiction consisted of "numerous communications via telephone, mail, electronic mail and facsimile" by the defendants, "two telephone calls from [a defendant] . . . during which [the parties] discussed the terms of the purchase," and a meeting "for seven hours" between the plaintiffs and defendants in Boston. *Id.* at 95-96. Noting that "the relatedness test is a flexible, relaxed standard," the Court held that because "[n]early every contact [the defendants] had with Massachusetts was instrumental

to the formation of the [contract]," the plaintiffs' contract claims "arise from [plaintiffs'] transactions of business in Massachusetts." *Id.* at 96-97. It then held that "[t]he numerous communications [the defendant] sent to Massachusetts, as well as [the] meeting in Massachusetts, fulfill the *International Shoe* standard [of purposefulness]." *Id.* at 98. The Court concluded by finding that these same facts indicated that "it is reasonable for this Court to exercise personal jurisdiction over [the defendants]" based on the Gestalt factors. *Id.* Lycos has alleged these same facts – a meeting in Massachusetts to negotiate the contract, and numerous letters, e-mails, faxes and calls to Massachusetts – and more.

Similarly, the SJC in *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76 (1979), found that in a breach of contract case, the court had personal jurisdiction over the foreign defendant when the alleged contacts consisted of sending periodic reports to the plaintiff's office in Massachusetts over the course of one year, frequent initiation of telephone calls with the plaintiff in Massachusetts, mailing monthly invoices to the plaintiff in Massachusetts, and regularly accepting payment by checks drawn from the plaintiff's Massachusetts bank account. *See id.* at 6-7. The Court found that the key to the constitutional analysis was that the alleged contacts showed that the defendant's interaction with Massachusetts was not "an isolated transaction." *Id.* at 9. The Court found that the facts as alleged proved that "[t]he defendant knowingly and purposefully engaged in transactions with the plaintiffs in Massachusetts." *Id.* at 10. Similarly, because T-Data's contacts mirror those in *Good Hope* (numerous letters, e-mails, faxes and calls to Massachusetts, sending invoices to Massachusetts, accepting payment from Lycos' Massachusetts bank account) and also include additional contacts not present in *Good Hope* (physical attendance at a meeting in Massachusetts, performance of services in Massachusetts, sending "warning letters" into

Massachusetts), Lycos has proffered sufficient evidence of this Court's personal jurisdiction over T-Data to withstand constitutional scrutiny.

Because Lycos' showing on the "relatedness" and "purposeful availment" tests are so strong, T-Data is unable to meet its burden of showing that conferring jurisdiction over it in Massachusetts somehow violates notions of "fair play and substantial justice."[3] In fact, T-Data in its Memorandum of Law has failed to even try to do so.

There are five Gestalt factors that have been identified to gauge fairness, application of each of which to this case demonstrates that it would not be "unfair" to subject T-Data to jurisdiction in Massachusetts:

(1) The defendant's burden of appearing – T-Data cannot show that having to defend itself in Massachusetts meets this standard, since "defending in a foreign jurisdiction almost always presents some measure of inconvenience, and hence this factor becomes meaningful only where a party can demonstrate a 'special or unusual burden,'" which T-Data cannot do. *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995).

(2) The forum state's interest in adjudicating the dispute – Massachusetts has a clear interest in adjudicating this dispute, because "significant events took place in Massachusetts" and it has an interest "in providing its citizens with a convenient forum in which to assert their claims." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996).

(3) The plaintiff's interest in obtaining convenient and effective relief – The First Circuit has "repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own

---

[3] It is clear that once the plaintiff meets its burden on the "relatedness" and "purposeful availment" tests, the burden shifts to the defendant to prove unreasonableness. *See, e.g., Burger King*, 471 U.S. at 476 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, *he must present* a compelling case that the presence of some other consideration would render jurisdiction unreasonable) (emphasis added).

convenience," *Sawtelle*, 70 F.3d at 1395, particularly so here where it is clear that a number of key Lycos witnesses are residents of Massachusetts. *See Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 211 (1st Cir. 1994).

(4) The judicial system's interest in obtaining the most effective resolution of the controversy – Because T-Data can present any unusual circumstances that would cause Massachusetts to be an inconvenient forum for the administration of justice, this factor "does not appear to cut in either direction." *Sawtelle*, 70 F.3d at 1395.

(5) The common interest of all sovereigns in promoting substantive social policies – Here, "Massachusetts has an interest in protecting its citizens from out-of-state providers of goods and services as well as affording its citizens a convenient forum in which to bring their claims," which interests "are best served by the exercise of jurisdiction in Massachusetts." *Nowak*, 94 F.3d at 719.

## CONCLUSION

This Court has jurisdiction over this matter and over this defendant. With regard to subject matter jurisdiction, Lycos' First Amended Complaint renders moot T-Data's concerns that a "case or controversy" does not exist, and dictates that dismissal be denied based on this ground. Furthermore, this Court has personal jurisdiction over T-Data because Lycos has proffered sufficient facts to show that T-Data transacts business in the Commonwealth in satisfaction of the long-arm statute, and has sufficient "minimum contacts" with the Commonwealth resulting from affirmative, intentional acts of T-Data such that it is fair and reasonable to require T-Data to come into the Commonwealth to defend this action, in

compliance with due process standards. As a result, Lycos respectfully requests that this Court deny T-Data's Motion to Dismiss.

>Respectfully submitted,
>
>LYCOS, INC.
>
>By its attorneys,
>
>_/s/ Erik Bartenhagen_
>Thomas O. Bean (BBO #548072)
>Erik P. Bartenhagen (BBO# 640003)
>NUTTER, McCLENNEN & FISH, LLP
>World Trade Center West
>155 Seaport Boulevard
>Boston, MA 02210-2604
>(617) 439-2000

Dated: January 26, 2005

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document, and the supporting affidavits of Andrew W. Feinberg, Dean Batten and Julie Callegee, were served upon the attorney of record for defendant, Barry S. Pollack, Donnelly, Conroy & Gelhaar, LLP, One Beacon Street, 33rd Floor, Boston, MA 02108, by hand on January 26, 2005.

>_/s/ Erik Bartenhagen_
>Erik P. Bartenhagen