## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYCOS, INC.,           ) | C.A. No. 04-12716-WGY |
| )  | |
| Plaintiff,       ) | |
| ) | |
| v.                     ) | **AFFIDAVIT OF** |
| ) | **THOMAS O. BEAN** |
| TELEFONICA DATA USA, INC.,   ) | |
| ) | |
| Defendant.      ) | |

I, Thomas O. Bean, state under oath as follows:

1.     I am a partner with the law firm Nutter, McClennen and Fish, LLP, attorneys for the plaintiff Lycos, Inc. ("Lycos") in this action. I have been a member in good standing of the bar of the Supreme Judicial Court of the Commonwealth of Massachusetts since 1986, and of this Court since 1987. I respectfully submit this Affidavit in connection with Lycos' Opposition to defendant Telefonica Data USA, Inc's ("T-Data") Motion to Dismiss Lycos' Amended Complaint.

2.     Attached hereto as Exhibit A is a true and accurate copy of a letter I sent to Thomas J. Quarles, an attorney for T-Data, dated January 18, 2005.

3.     Attached hereto as Exhibit B is a redacted copy of a letter I received from Mr. Quarles dated January 19, 2005. Exhibit B has been redacted so as to show only the existence of certain disputes between the parties.

**SIGNED UNDER THE PENALTIES OF PERJURY this 25th day of February, 2005.**

/s/ Thomas O. Bean

- 2 -

**1406967.1**

- 2 -

EXHIBIT A to Affidavit of Thomas O. Bean



Thomas O. Bean
Direct Line: 617-439-2348
Fax: 617-310-9348
E-mail: tbean@nutter.com

January 18, 2005
105401-2

**BY E-MAIL**

Thomas J. Quarles, Esq.
Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.
Suite 2500
150 West Flagler Street
Miami, Florida 33130

    Re:    *Lycos, Inc. v. Telefonica Data USA, Inc.*,
           D. Mass., C.A. No. 04-12716-WGY ("Civil Action")

Dear Tom:

    The more I dig into the Transaction Documents, the more I understand about them and the parties' relationship. You are way ahead of me in this area as you discussed the terms with Lycos and drafted much of the language of the Transaction Documents.

    Here is some interesting history concerning the drafting of the Master Services Agreement that you may recall. On July 3, 2003, Andrew Feinberg, then Lycos' General Counsel, sent you an e-mail with comments on a draft of the MSA he had received from Zeke. One of his comments was that you should add back in the reference to the SAFA. He described this change as "fundamental." See paragraph 4 in e-mail from Mr. Feinberg attached hereto under heading, "MSA".

    In response to his e-mail, you sent Mr. Feinberg an e-mail dated July 8, 2003. In that e-mail, you referred to an attached "blacklined version (blacklined against the version Zeke sent you earlier) incorporating many of your comments." Before you blacklined the changes you made on July 8, 2003, paragraph 2 on pricing had read:

> All pricing for Services shall be set forth in each Exhibit and Customer shall pay Telefonica Data all recurring and non-recurring fees and other charges for Services rendered in the amounts and in the manner specified there and in the Master Services Agreement General Terms & Conditions.

Thomas J. Quarles, Esq.
January 18, 2005
Page 2



You then edited it to read as follows, as reflected in your blackline:

> All pricing for Services shall be <u>in accordance with the Strategic Alliance Framework Agreement between Terra Networks, S.A. and Telefonica, S.A. dated January 29, 2003 ("SAFA") and</u> set forth in each Exhibit and Customer shall pay Telefonica Data all recurring and non-recurring fees and other charges for Services rendered in the amounts and in the manner specified there and in the Master Services Agreement General Terms & Conditions.

<u>See</u> black-lined version of the MSA attached to your e-mail of July 8, 2003. Thus, in July, 2003, you drafted and incorporated into the MSA by reference the <u>January 29, 2003</u>, SAFA, not the SAFA dated February 12, 2003.

Last week, I sent you a blacklined version of the SAFA from February, 2003, to reflect changes that had been made to the January 29, 2003 version. Attached is a clean version of the January 29, 2003, SAFA in English; we also have a clean copy in Spanish.

Given that the January 29, 2003, SAFA expressly required T-Data to provide Lycos with "best market rates," and you drafted the language referencing the January 29, 2003, SAFA, rather than the February 12, 2003, SAFA, there is no doubt that T-Data is required to offer Lycos "best market rates." To the extent there is any ambiguity in the January 29, 2003, date, that ambiguity would be construed against T-Data as you drafted the date.

If you have any information concerning the MSA and drafting thereof that would indicate the foregoing analysis is incorrect, please provide it to me at your earliest convenience. Also, please let me know by 3:00 p.m. on January 20, 2003, whether T-Data still maintains that the SAFA requires it to give Lycos only "most favored customer" prices as opposed to "best market rates." If I do not hear from you, I will assume that T-Data still believes that it must offer only "most favored customer" prices. Indeed, as set forth in Patrick Hetherton's letter to David Salway of January 14, 2005, T-Data is not even offering Lycos "most favored customer" prices.

Further, as you may know, Lycos canceled the Madrid switch in October, 2003. Recently, Lycos received a bill from T-Data for the full amount of all payments due over the next fourteen months for that switch. While I appreciate that section 4.2 of Exhibit I to the MSA with reference to ATM Service provides for payment after termination of an amount equal to the sum of the monthly charges for the ATM Service multiplied by the number of months remaining in the term commitment, this liquidated damages clause would not be enforceable for the reasons set forth in the following paragraph.

Thomas J. Quarles, Esq.
January 18, 2005
Page 3



      The liquidated damages provision puts Lycos in a worse position, and T-Data in a better position, than they would have been in if Lycos had not canceled the Madrid circuit. As to the former, Lycos would have been better off not canceling the Madrid switch and paying $11,000 per month rather than canceling it and being invoiced on an accelerated basis for 100% of the amounts that T-Data claims would ultimately be due. As to the latter, as a result of Lycos' cancellation of the Madrid circuit, T-Data maintains it is entitled to receive the full $11,000 per month on an accelerated basis, without having to incur any future costs. In other words, T-Data would receive profit of $11,000 per month – more than it would have if Lycos had not canceled the circuit. Accordingly, because the liquidated damages clause "provides for an amount plainly disproportionate to the real damage [and] is not intended to provide fair compensation but to secure performance by the compulsion of the very disproportion," it is not enforceable as against public policy under New York law. *Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 361 N.E.2d 1015, 1018 (N.Y. 1977). *See also United States Fidelity and Guaranty Co. v. Braspetro Oil Services Co.*, 369 F.3d 34, 71 (2d Cir. 2004) (applying N.Y. law) ("[W]here the damages flowing from a breach of contract are easily ascertainable, or the damages fixed are plainly disproportionate to the contemplated injury, the stipulated sum will be treated as a penalty and disallowed."); *National Telecanvass Assoc., Ltd. v. Smith*, 470 N.Y.S.2d 22, 24 (N.Y. Sup. Ct. 1983) (holding that "since the contract price . . . is identical to the 'liquidated' amount, the primary purpose of the clause in issue appears to have been to compel the performance . . . rather than to approximate the amount of the plaintiff's probable loss," and concluding that the liquidated damages provision is unenforceable as a result).

      Please advise me by 3:00 p.m. on January 20th as to whether you agree that this liquidated damages provision is unenforceable. If I do not hear from you, I will assume that T-Data believes the provision is enforceable.

      Thank you for your attention to this matter. If you have any questions with respect to it, please do not hesitate to contact me.

                                                              Very truly yours,

                                                              Thomas O. Bean

1395740.1

EXHIBIT B to Affidavit of Thomas O. Bean

**STEARNS WEAVER MILLER**
**WEISSLER ALHADEFF & SITTERSON, P.A.**

Miami ■ Ft. Lauderdale ■ Tampa

Thomas J. Quarles
Direct Line: (305) 789-3517
Fax: (305) 424-0710
Email: tquarles@swmwas.com

Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
305-789-3200

January 19, 2005

By Email (tbean@nutter.com)

REDACTED

**FOR SETTLEMENT PURPOSES ONLY**

Thomas O. Bean
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604

Re: **Lycos, Inc. v. Telefonica Data USA, Inc.**
**D. Mass., C.A. 04-12716-WGY**

Dear Tom:

This letter is in response to your letter dated January 18, 2005. Your argument that the "Strategic Alliance and Framework Agreement dated January 29, 2003" controls the pricing obligations under the Master Services Agreement is fundamentally flawed in two respects.

TDUSA disagrees with your position that the early termination charges with respect to the Madrid circuit are unenforceable.

January 19, 2005
Page 2

REDACTED

Sincerely,

[signature]