UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYCOS, INC., )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>TELEFONICA DATA USA, INC., )<br>)<br>Defendant. )<br>_____) | CIVIL ACTION<br>NO. 04-12716-WGY |

**TELEFONICA DATA USA, INC.'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
LYCOS'S FIRST AMENDED COMPLAINT**

Telefonica Data USA, Inc. ("T-Data") submits this Reply Memorandum in support of its Motion to Dismiss Lycos, Inc.'s ("Lycos") First Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**INTRODUCTION**

The briefing relating to T-Data's Motion to Dismiss Lycos's First Amended Complaint well illustrates the value of the adversarial process. Amid the exchange of paper, one dispositive legal question has crystalized:[1] Is the Master Services Agreement's ("MSA") alternative dispute resolution clause (the "ADR clause") enforceable? If so, the Court lacks subject matter jurisdiction over Count I of the Complaint, leaving Lycos unable to claim supplemental jurisdiction as to the remaining Count. If the ADR clause is "substantively unconscionable," and

---

[1] We distinguish the singular legal question from the purely discretionary matter of whether the Court will take jurisdiction of Lycos's Declaratory Action in the first place. *See Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942); *Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306 (1st Cir. 1986). *See also* Docket Entry ("D.E.") 17, pp. 11-14.

therefore unenforceable, as Lycos argues, then the sole question for the Court is whether to take discretionary jurisdiction over Lycos's declaratory action. As to that alternative, T-Data relies on its Memorandum in Support of its Motion to Dismiss and submits no further briefing here.[2] As to the former alternative, however, T-Data believes legal briefing is critical: especially after Lycos's substantial distortion of the applicable law in its opposition memo.

## I. THE MSA'S ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ARE ENFORCEABLE UNDER NEW YORK LAW

Lycos claims that "at both the first and second stages of [the ADR process], the decision-makers are . . . selected by, related to, and/or employed by T-Data's parent and cousin companies," and then consumes the majority of its Opposition Memorandum with argument that the ADR clause, therefore, is "substantively unconscionable" and unenforceable under *Cross & Brown Co. v. Nelson*, 167 N.Y.S.2d 573, 576 (N.Y. App. Div. 1957) law.[3] *See* Opp. Memo., p. 9. Lycos materially mistakes the status of *Cross*, and New York law generally.

New York law has evolved since 1957, when *Cross* was decided. Indeed, in 1993 the New York Court of Appeals receded from *Cross* and held that, "even in cases where the contract expressly designated a single arbitrator who was employed by one of the parties or intimately connected with him, the courts have refused to disqualify the arbitrator on the ground of either interest or partiality. . . ." *Westinghouse Elec. Corp. v. New York City Transit Auth.*, 82 N.Y.2d

---

[2] T-Data maintains Lycos has attempted to federalize a garden variety contract action, solely in order to maintain jurisdiction in this Court. Lycos, in contrast, argues that T-Data "federalized" this action by removing it. T-Data, however, removed an entirely different case based on an entirely different request for declaratory relief. Lycos's present claims were first asserted in its First Amended Complaint, and are substantively different than those asserted in Lycos's initial Complaint, which T-Data removed.

[3] Lycos argues, and T-Data agrees, that the MSA should be construed in accordance with New York law.

47, 54 (N.Y. 1993); *see also Siegel v. Lewis*, 40 N.Y.2d 687, 690 (N.Y. 1976)("a fully known relationship between an arbitrator and a party . . .will not disqualify the designee"); *Astoria Med. Group v. Health Ins. Plan of Greater New York*, 11 N.Y.2d 128, 136 (N.Y. 1962)("an arbitrator may not be disqualified solely because of a relationship to his nominator or to the subject matter of the controversy"). Therefore, although the New York Court of Appeals never has explicitly overruled *Cross*, *Cross* has been displaced by *Westinghouse*, under whose authority modern New York courts now enforce contracts to arbitrate, even before arbitrators who are "intimately connected" with a party.

*Westinghouse* came to the New York Court of Appeals from the United States Court of Appeals for the Second Circuit as a certified question as to New York's law and public policy regarding the enforcement of an "ADR provision that authorizes an employee of a party to a contract dispute . . . to make conclusive, final, and binding decisions on all questions arising under the contract." *See Westinghouse*, 82 N.Y.2d at 51. Based upon its earlier decisions in *Siegel* and *Astoria Medical Group*, the Court of Appeals held in *Westinghouse* that the public policy of New York favors and encourages arbitration and other forms of alternative dispute resolution; *Westinghouse*, at 53; and, therefore, courts must "interfere as little as possible with the freedom of consenting parties to achieve that objective...." *Id.*, at 54. Applying these principles, the court noted that Westinghouse had "chose[n], with its business eyes open, to accept the terms, specifications and risk of the bid contract, including the [alternative dispute resolution] clause," and that "where . . . parties are 'dealing at arm's length with relative equality of bargaining power,' they ought to be left to themselves." *Id.*, at 54-55. Therefore, the court declined to interfere with the operation of the ADR clause because Westinghouse knowingly accepted the risk of having an arbitrator with potentially adverse interests. *Id.*

*Siegel* is also instructive here. There the New York Court of Appeals upheld the enforceability of a commercial arbitration clause that named an attorney and an accountant of one of the parties as the sole arbitrators. *Siegel*, 40 N.Y.2d at 690. In concluding that there was no basis upon which to disqualify the arbitrators in advance of arbitration, the court noted that both arbitrators had rendered professional services to the party for approximately fifteen years. *Id.*, at 688. In addition, the court noted that the attorney was "the chief draftsman" of the underlying stock purchase agreement, and that the accountant was named as escrowee by that agreement. *Id.*, at 691. Nevertheless, because these facts were fully known to both parties at the time that they entered into the ADR agreement, the court refused to intervene. *Id.*

Since 1993, when *Westinghouse* was decided, the New York appellate courts have repeatedly upheld the enforceability of ADR clauses that authorize adjudication by agents, employees and other parties closely associated or aligned with a party to the underlying dispute. *See, e.g., Yonkers Contracting Co. v. Port Auth. Trans-Hudson Corp.*, 87 N.Y.2d 927, 930 (N.Y. App. Div. 1996); *Weeks Marine, Inc. v. City of New York*, 737 N.Y.S.2d 92 (N.Y. App. Div. 2002), appeal denied, 99 N.Y.2d 505 (2003); *Laquila Constr., Inc. v. New York City Transit Auth.*, 723 N.Y.S.2d 464 (N.Y. App. Div. 2001), appeal denied, 96 N.Y.2d 721 (2001). In fact, in *Laquila Construction*, the only recent New York case to reference *Cross*, the Appellate Division reversed the judgment of the trial court invalidating an alternative dispute resolution clause similar to the one at issue in *Westinghouse*. The court expressly noted the impact of the *Westinghouse* decision: "While the [trial] court's decade-old decision ... is understandable in terms of the *then-controlling precedent*, it has been clear since at least 1993 that the contract clause providing for dispute resolution by [a party's] is not against public policy, [and] is

enforceable ..." *Laquila Constr., Inc.*, supra, at 332, 723 N.Y.S.2d 464. *Cross* is dubious authority.

In contrast to *Cross's* now discredited approach, the appropriate analysis here is whether Lycos knew of Terra and Telefonica's relationships to T-Data when it elected to submit itself to the MSA's alternative dispute resolution procedures:

> Considerable authority ... supports the validity and enforceability of alternative dispute resolution mechanisms, *which reflect the informed negotiation and endorsement of parties*. It is firmly established that the public policy of New York State favors and encourages arbitration and alternative dispute resolutions....Thus, [i]t has long been the policy of the law to interfere as little as possible with the freedom of consenting parties to achieve that objective. . . .

*Westinghouse Elec. Corp. v. New York City Transit Auth.*, 82 N.Y.2d 47, 53-54, 623 N.E.2d 531, 603 N.Y.S.2d 404 (1993)(emphasis supplied).

> Central to that freedom is the recognized right of the parties, subject to limited exceptions . . . to name those who are to be the arbitrators, or, if the parties prefer not to name them directly, to choose the way in which they are to be selected. In fealty to that principle, we have made clear that [t]he spirit of the arbitration law being the fuller effectuation of contractual rights, the method for selecting arbitrators and the composition of the arbitral tribunal have been left to the contract of the parties.

*Siegel*, 40 N.Y.2d at 689. "Therefore, strange as it may seem to those steeped in the proscriptions of legal and judicial ethics, *a fully known relationship between an arbitrator and a party*, including one as close as employer and employee ... or attorney and client ... *will not in and of itself disqualify the designee*." *Id.*, at 690 (emphasis supplied).

Lycos indisputably knew of Terra and Telefonica's relationship to T-Data when it consented to the SAFA's ADR procedures. *See* Opp. Memo, p. 2 ("At the time Lycos and T-

Data negotiated and executed the Transaction Documents, Lycos was a wholly-owned subsidiary of Terra Networks, S.A. ('Terra'), whose controlling shareholder was Telefonica, S.A. ('Telefonica'), the sole owner of T-Data"). Therefore, in accordance with New York law and its policy, as articulated in *Westinghouse*, Lycos should be held to its contractual commitment to arbitrate. "The bedrock doctrine of unconscionability is 'the prevention of oppression and unfair surprise . . . ." *Westinghouse*, 82 N.Y.2d at 55. Given Lycos's knowledge of Terra and Telefonica's relationship to T-Data at the time it contracted with T-Data, the ADR clause simply cannot be held "substantively unconscionable."[4]

## II.   COUNT I OF LYCOS'S FIRST AMENDED COMPLAINT IS ARBITRABLE

Lycos next attempts to distance Count I from the ADR clause, by claiming the dispute really is not about pricing. This lawsuit did not arise in a vacuum, however. In a January 10, 2004 demand letter Lycos' counsel claimed that "Lycos has received an offer of $22 per square foot for space, and $33/Mbps, along with free power," and that in order "[t]o comply with the most favored customer status of the [SAFA], *T-Data should offer Lycos prices at least equivalent to those*, if not better." (D.E. 18, Exh. "D")(emphasis supplied). A week later Lycos restated its argument:

---

[4] Even assuming the ADR clause has somehow been rendered unfair because of Terra's divestment of Lycos, Lycos's commitment to arbitrate must still be given effect. In contracts to arbitrate, "there may be a dominant intention to arbitrate at all events, the machinery of selection being merely modal and subordinate. If so the failure of the means will not involve as a consequence the frustration of the end." *See Marchant v. Mead-Morrison Mfg.*, 252 N.Y. 284 295 (N.Y. 1929). Based upon § 5 of the Federal Arbitration Act, *see* 9 U.S.C. §5, federal courts will not void arbitration agreements because an otherwise valid arbitrator cannot or will not arbitrate the dispute. Instead, different arbitrators must be appointed. *See Astra Footwear Indus. v. Harwyn Int'l Inc.*, 442 F. Supp. 907 (S.D.N.Y.1978); *see, also, McGuire, Cornwell & Blakey v. Grider*, 771 F. Supp. 319 (D. Colo.1991); *Zechman v. Merrill, Lynch, Pierce, Fenner, & Smith, Inc.*, 742 F. Supp. 1359 (N.D. Ill.1990).

> Given that the January 29, 2003 SAFA expressly required T-Data
> to provide Lycos with "best market rates," and you drafted the
> language referencing the January 29, 2003 SAFA, rather than the
> February 12, 2003 SAFA, *there is no doubt that T-Data is required
> to offer Lycos "best market rates."*

(D.E. 24, Exh., "A")(emphasis supplied). Lycos's subsequent First Amended Complaint frames the dispute no differently:

> . . . the January 29, 2003 SAFA allows Lycos to purchase the
> services covered by the Transaction Documents from T-Data *at the
> best market price*, where as the February 12, 2003 permits Lycos
> to purchase those services at the price offered to T-Data's most
> favored client.

(D.E. 12, ¶18)(emphasis supplied). There can be no denying that this is a dispute about pricing. Which SAFA controls is not an abstract question; if it were, it would not properly be before the Court. *See Public Service Comm'n of Utah v. Wycoff*, 344 U.S. 237, 241-42 (1952); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937); *Keene Corp. v. Fiorelli*, 14 F.3d 726, 731 (2d Cir. 1993). Rather, it is practically, exclusively, and – as per Lycos's own characterization – admittedly a question about whether T-Data should charge Lycos "the best market price" or "most favored client" prices for its service. "The January 29 SAFA" and "The February 12 SAFA" are merely Lycos's euphemisms for "best market price" and "most favored client price." As such, the dispute is well within Lycos's commitment to submit all questions relating to the "quality and charges" for T-Data's services to ADR.

Generally "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said *with positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). Under this – or

any – standard, Lycos's claim is fundamentally and inescapably about price, and therefore, necessarily subject to the ADR clause.

## CONCLUSION

Lycos committed to the ADR clause knowing Terra and Telefonica's relationship with T-Data. Accordingly, under New York law it must be held to its bargain and Count I of the First Amended Complaint must be sent to arbitration. For the reasons set forth herein and in T-Data's Motion to Dismiss, Lycos's First Amended Complaint must be dismissed.

TELEFONICA DATA USA, INC.

By its attorneys,

_____
Barry S. Pollack (BBO# 642064)
Jill Brenner Meixel (BBO# 652501)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880

Dated: March 8, 2005